IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JUDI T.-C.,[1]

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

No. 1:18-cv-00703-HZ

OPINION & ORDER

Tim D. Wilborn
P.O. Box 370578
Las Vegas, NV 89137

    Attorney for Plaintiff

Billy Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Heather L. Griffith
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

    Attorneys for Defendant

---

[1] In the interest of privacy, this Opinion and Order uses only Plaintiff's first name and the initial of her last name.

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Judi T.-C. brings this action for judicial review of the Commissioner's final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The issues before the Court are whether the Administrative Law Judge ("ALJ") erred by: (1) discounting Plaintiff's testimony; (2) discounting the lay opinion of Carol Rogers, Plaintiff's friend and employer; (3) classifying Plaintiff's past relevant work as that of a "receptionist" when the ALJ found Plaintiff capable of performing such work at step four; and (4) finding in the alternative that Plaintiff is capable of performing other work available in the national economy at step five. The Court reverses the Commissioner's final decision and remands for further administrative proceedings consistent with this Opinion and Order.

## BACKGROUND

Plaintiff applied for DIB on October 17, 2013, alleging a disability onset date of July 2, 2013. Tr. 172.[2] Plaintiff's application was denied initially and upon reconsideration. Plaintiff's administrative hearing was held on January 23, 2017, before ALJ Elizabeth Watson. Tr. 29. In a written decision issued February 17, 2017, ALJ Watson found Plaintiff not disabled. Tr. 14–23. On March 16, 2018, the Appeals Council denied review, rendering ALJ Watson's decision final. Tr. 1–5.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v.*

---

[2] "Tr." refers to the administrative record transcript, filed here as ECF 7.

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the RFC to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

# THE ALJ'S DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 2, 2013, the alleged onset date. Tr. 16.

At step two, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease of the cervical spine, and left sternoclavicular joint arthritis. Tr. 16–18.

At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 18.

Before step four, the ALJ determined Plaintiff had the RFC to perform work consistent with the following limitations:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. [Sh]e is limited to sitting, standing, and/or walking each about six hours each in an eight hour workday, with normal breaks. The claimant is limited to no more than frequent climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds. The claimant is limited to no more than frequent overhead reach with the left upper extremity.

Tr. 18–21.

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a receptionist. Tr. 21.

In the alternative, at step five, the ALJ concluded other jobs existed in the national economy that Plaintiff could perform, including work as an office helper, a mail sorter, and a storage facility rental clerk. Tr. 22. Accordingly, the ALJ concluded Plaintiff is not disabled. Tr. 22–23.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ's decision was not supported by substantial evidence and contains legal errors. In particular, Plaintiff argues the ALJ made the following four errors. First, the ALJ improperly discredited Plaintiff's testimony. Second, the ALJ improperly discredited the lay opinion of Carol Rogers, Plaintiff's friend and former employer. Third, the ALJ improperly categorized her past relevant work as that of a "receptionist." Fourth, the ALJ's alternative step five findings were erroneous because they were based on an assessment of Plaintiff's RFC that was not supported by substantial evidence.

## I. Plaintiff's Testimony

Plaintiff contends the ALJ improperly rejected her testimony regarding the severity and extent of her limitations. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As the Ninth Circuit further explained in *Molina*:

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

At the January 23, 2017, hearing Plaintiff testified she works an average of 14 hours per week at a "check cashing facility." Tr. 35. Plaintiff reported she is unable to work more than 14 hours per week because of her "lack of sleep," "back issues," and "collarbone issues," and because she does not have an option to sit while working the teller window. Tr. 38–40. Plaintiff testified she is restricted to lifting only three pounds and has difficulty reaching caused by her collarbone pain. Tr. 37, 40–41. Plaintiff reported she is capable of walking "for a while" at a slow pace and has trouble with daily activities like showering, putting on clothes and shoes, and doing laundry. Tr. 41–43.

In her October 16, 2013, Adult Function Report Plaintiff indicated it is "painful to stand, sit[,] or walk for long periods of time" and she has difficulty with reaching, bending over, kneeling, and lifting. Tr. 205. Plaintiff reported that at that time she cared for her husband and performed daily chores around the house. Tr. 206. Nonetheless, Plaintiff indicated her personal-care and daily activities were limited by her difficulties reaching and lifting. Tr. 207–08. Plaintiff reported her conditions affected her abilities to lift, squat, bend, stand, reach, walk, sit, and kneel, and that she could only lift three pounds. Tr. 210. Plaintiff also indicated she could only walk two blocks before needing to rest for the remainder of the day. Tr. 210.

The ALJ discredited Plaintiff's testimony because the ALJ found it inconsistent with the medical record, Plaintiff had a history of conservative medical treatment, Plaintiff engaged in activities of daily living that were inconsistent with her reported limitations, and Plaintiff testified her ability to work full-time was only limited by the availability of hours at her current job.

The ALJ's finding that the medical record was inconsistent with Plaintiff's allegations is only partially supported by the record. Plaintiff's reported three-pound lifting limitation, for example, is not reflected in the medical record. Moreover, the ALJ correctly pointed out that some physical examinations indicated Plaintiff had full range of motion. *E.g.*, Tr. 301, 394, 488. A May 2013 CT scan produced findings "consistent with osteoarthritis" and an October 2013 shoulder CT found "extensive calcification of the chondral elements of the left first rib . . . which may account for pain." Tr. 474. However, in October 2013 Robert Orfaly, M.D., an orthopedic surgeon, found a lack of deformity or instability in the imaging and characterized Plaintiff's shoulder and collarbone problems as a "difficult diagnosis." Tr. 474. Nonetheless, other examinations of Plaintiff's shoulder and collarbone indicated Plaintiff had a limited range of motion and/or pain and crepitus during range-of-motion testing. *E.g.*, Tr. 298, 300, 504. In addition, Plaintiff's reports of pain and functional limitations associated with her collarbone were consistent throughout the medical record. *E.g.*, Tr. 298, 301, 472, 503, 526. Accordingly, although the ALJ was correct that the medical record contains some inconsistencies with Plaintiff's testimony, some of those are likely attributable to the fact that treatment providers had difficulty diagnosing Plaintiff's collarbone and shoulder problems. This factor, therefore, only somewhat supports the ALJ's finding that Plaintiff's testimony was not credible.

The ALJ's finding that Plaintiff's "treatment has been very conservative, largely over-the-counter and prescription medication" and inference that Plaintiff "has not generally received the type of medical treatment one would expect from a totally disabled individual" is not supported by the record. Tr. 20. To the contrary, Plaintiff's treatment with over-the-counter and prescription pain medication and physical therapy appears to be attributable to the fact that Plaintiff's shoulder and collarbone condition was difficult to diagnose. Dr. Orfaly, Plaintiff's orthopedic surgeon, for example, noted "[u]nfortunately, there doesn't appear to be any viable surgical treatment option at this point." Tr. 474. Moreover, short of pursuing a surgical option, the ALJ did not articulate any basis for finding that Plaintiff's treatment with pain medication and physical therapy could be considered "conservative." The Court, therefore, concludes Plaintiff's treatment history is not inconsistent with her allegations of significant reaching and lifting limitations, and there is not any basis in the record from which the ALJ could conclude the lack of more aggressive treatment indicated Plaintiff's conditions or limitations were not as serious as she reported.

The ALJ also erroneously found Plaintiff's ability to "perform adequate self-care, prepare simple meals, do household chores and go out to the store . . . indicate[s] a higher level of function than that alleged by claimant." Tr. 20. Plaintiff consistently testified that although she was able to perform some personal-care activities and daily chores, she could not perform those that required reaching or lifting, and some routine personal-care activities like showering and dressing were difficult and painful. Tr. 43–44, 206–07. This level of daily activity is not inconsistent with Plaintiff's allegations of disability.

Finally, the ALJ discredited Plaintiff's testimony because Plaintiff continued to work on a part-time basis and "she admitted that this was because only limited hours were available." Tr.

20. Plaintiff did not make any such admission. Although Plaintiff reported only limited additional hours would be available at her current employment, Plaintiff also indicated she could not work more hours because of her lack of sleep, pain, and lifting and reaching limitations. Tr. 36–40.

Even though the ALJ referenced some legitimate reasons to discredit Plaintiff's testimony, the Court finds those do not amount to clear and convincing reasons supported by substantial evidence for doing so. Accordingly, the Court concludes the ALJ erred when she discredited Plaintiff's testimony.

## II. Lay Testimony of Carol Rogers

Plaintiff next contends the ALJ improperly discredited the lay testimony of Carol Rogers, Plaintiff's friend and employer.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay-witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Molina*, 674 F.3d at 1114. Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). Germane reasons for discounting lay-witness testimony include: conflicts with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). Another germane reason to discredit lay testimony is that it is substantially similar to the claimant's validly discredited allegations. *Valentine*, 574 F.3d at 694.

Rogers submitted a letter dated January 19, 2017, in which she indicated Plaintiff has been her friend since 1991 and that Plaintiff has worked for Rogers at two different businesses

since 2013. Tr. 296. At a storage facility business, Rogers indicated Plaintiff "could not do everyday tasks of pushing a broom to clean units," lifting doors to show units to prospective renters, or walking on uneven surfaces. Tr. 296. As a result, Rogers concluded Plaintiff could only "answer phones and input payments." Tr. 296. At her current business, Rogers reported Plaintiff has "a chair/stool that she can sit on when needed and a soft floor matt [*sic*] to help cushion her when she stands." Tr. 296. In addition, Rogers reported Plaintiff is unable to do other, more physically demanding tasks that employees would ordinarily do during slow periods at the business because Plaintiff "cannot lift much weight and cannot raise her hands above her head." Tr. 296. Rogers indicated Plaintiff works only two days per week and seven hours per day, and that Plaintiff is unable to work more even though additional hours would be available to her. Tr. 296.

      The ALJ did not discredit Rogers' testimony, but rather summarized her letter and simply stated her testimony had "been considered when determining the above [RFC]." The ALJ, however, failed to fully incorporate the limitations that Rogers reported into the RFC. For example, the RFC does not account for Rogers' report that Plaintiff is unable to work more than two days per week. Moreover, without explanation from the ALJ it is unclear whether the restriction to light work is consistent with Rogers' report that Plaintiff has significant lifting and reaching limitations.

      Accordingly, on this record the Court concludes the ALJ erred when she impliedly discredited Rogers' testimony because she failed to provide legally sufficient reasons for doing so.

### III. Steps Four and Five

Plaintiff contends the ALJ erred when she characterized Plaintiff's past relevant work as a "receptionist" because the vocational expert (VE) testified it was, in fact, a composite job that combined the duties of a receptionist and a veterinary assistant. Tr 45–46. As Defendant concedes, Plaintiff is correct that the ALJ's step four findings do not match the VE's testimony and the ALJ did not provide any explanation for this departure. Accordingly, the Court finds the ALJ erred at step four when she characterized Plaintiff's past relevant work as that of a receptionist.

Defendant nonetheless contends the ALJ's step four error was harmless in light of her alternative Step Five findings. The step five findings cannot render the step four error harmless, however, because the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence in light of the ALJ's errors related to the testimony of Plaintiff and Rogers.

Accordingly, on this record the Court concludes the ALJ erred at step four and in her alternative step five findings. Those errors were not harmless.

### IV. Remand

Because the Court concludes the ALJ's decision contained harmful legal errors and was not supported by substantial evidence in the record, the remaining question is whether this case should be remanded for further administrative proceedings or an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit applies the "credit-as-true" rule for determining whether remand for an immediate award of benefits is proper. *Garrison*, 759 F.3d at 1020. Each of the following must be satisfied to justify an immediate award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

> reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly where the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

The Court finds the record has not yet been sufficiently developed and that further administrative proceedings are necessary. In particular, even crediting Plaintiff's testimony as true the record leaves open the possibility that Plaintiff may nonetheless be able to perform jobs at the sedentary exertional level. At the administrative hearing, Plaintiff's then-counsel asked the VE whether jobs would exist in the national economy that Plaintiff could perform if the VE credited Plaintiff's allegation that she could not lift more than three pounds. The VE answered that there were jobs that Plaintiff could perform at the sedentary exertional level, including work as a charge account clerk, an addresser, and a document preparer. Tr. 50. Moreover, the testimony that Plaintiff is unable to work more than two days per week at Plaintiff's current job does not establish whether Plaintiff could work full-time at a different job. Accordingly, the Court finds the record is not yet fully developed and it is unclear whether the ALJ would be required to find Plaintiff disabled even if the testimony of Plaintiff and Rogers was credited as true.

On this record, therefore, the Court concludes further administrative proceedings are necessary to determine whether Plaintiff can perform other jobs available in the national economy.

CONCLUSION

For these reasons, the Commissioner's decision is reversed and remanded for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this \_\_\_\_ day of April, 2019.

                                        MARCO A. HERNÁNDEZ
                                        United States District Judge